53 F.3d 930
 40 ERC 1884, 25 Envtl. L. Rep. 21,378
 CONTROL DATA CORPORATION, a Delaware Corporation, Appellee,
v.
S.C.S.C. CORP., a Minnesota Corporation; Schloff Chemicals
and Supply Co., a Minnesota Corporation; and
Irvin Schloff and Ruth Schloff, Appellants.
CONTROL DATA COPRORATION, a Delaware Corporation, Appellant,
v.
S.C.S.C. CORP., a Minnesota Corporation; Schloff Chemicals
and Supply Co., a Minnesota Corporation; and
Irvin Schloff and Ruth Schloff, Appellees.
 Nos. 94-1875, 94-2414 and 94-2506.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1994.
Decided May 10, 1995.
 
 Leon R. Erstad, Minneapolis, MN, argued, for appellant.
 Edwin R. Holmes, Apple Valley, MN, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 Control Data Corporation brought this suit under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Sec. 9601 et seq., and the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. Sec. 115B.01 et seq. Following a bench trial, the District Court[1] found the Schloff defendants--S.C.S.C. Corp., Schloff Chemical, and Irvin and Ruth Schloff--liable under CERCLA and allocated responsibility for 33 1/3% of Control Data's response costs, as defined by CERCLA, to those defendants. Alternatively, the District Court found S.C.S.C. Corp. and Schloff Chemical liable under MERLA and allocated responsibility for 33 1/3% of Control Data's removal costs, as defined by MERLA, to those defendants. The District Court held that Irvin and Ruth Schloff were not liable under MERLA.
 
 
 2
 The Schloff defendants appeal. We affirm the judgment of the District Court finding the Schloff defendants liable under CERCLA and allocating 33 1/3% of Control Data's response costs to them. We also affirm the District Court's decision to award Control Data 33 1/3% of its attorneys' fees under MERLA, but reverse that part of the District Court's judgment awarding attorneys' fees under CERCLA.
 
 I. Factual Background
 
 3
 Control Data owns and operates a printed-circuit-board facility on Meadowbrook Road in St. Louis Park, Minnesota. Across Meadowbrook Road and Minnehaha Creek, the Schloff defendants owned and operated a dry-cleaning supply business, Schloff Chemical, from 1975 until 1989.[2] Irvin Schloff was president of Schloff Chemical from 1963 to 1989, and exercised day-to-day control over its operations until 1985, when a General Manager was hired. Ruth Schloff has been the record owner of the real property where Schloff Chemical was located since 1974. S.C.S.C. Corp. is the current corporate incarnation of Schloff Chemical.
 
 
 4
 In 1987, Control Data discovered a leak in its sewer line. Fearing contamination, Control Data initiated an investigation, and, indeed, discovered the presence of volatile organic compounds in the groundwater underlying the Control Data site. Principal among these contaminants were 1,1,1 trichloroethane (TCA) and its degradation substances and tetrachloroethylene (PERC) and its degradation substances. A degradation substance is what a chemical becomes when it begins to break down. PERC and TCA degrade into many of the same substances.
 
 
 5
 After confirming that groundwater contamination existed, Control Data reported its findings to the Minnesota Pollution Control Agency (MPCA) and began cooperating with that agency in an effort to clean up the site. Control Data has admitted that it is the source of the TCA and its degradation substances. TCA has been spilled, or "released" in CERCLA terminology, many times by Control Data. But Control Data denied ever using, much less releasing, PERC, a circumstance which led the MPCA to search for other sources for the PERC contamination. It turns out that Schloff Chemical was that source.
 
 
 6
 Schloff Chemical released PERC several times between 1975 and 1989. The PERC released by Schloff Chemical formed a "plume," or discernible body of contaminants, that has migrated beneath Minnehaha Creek and joined with the TCA plume, created by Control Data's releases, on the Control Data site. It is now impossible to discern one plume from the other.
 
 
 7
 In April of 1988, Control Data entered into a consent decree with the MPCA that required it to investigate, monitor, and clean up the contamination. Pursuant to this agreement, Control Data has installed a remediation system which removes both the TCA and the PERC contaminants concurrently. This cleanup is ongoing and will proceed for an undetermined period of time.[3]
 
 
 8
 Control Data brought this lawsuit in order to recover a portion of the costs it incurred as a result of the PERC contamination on its site. The District Court found that the Schloff defendants were all liable under CERCLA because they were responsible for releasing hazardous substances into the environment, and that release had caused Control Data to incur response costs. Important to the District Court's reasoning was its finding that PERC is more toxic and more difficult to clean up than TCA. Since the remediation system was designed and constructed around the need to clean up PERC, the release of PERC created additional response costs.
 
 
 9
 This greater level of toxicity was also central in the District Court's allocation of liability. Though the Schloff defendants were responsible for only 10% of the contamination on the site, the District Court allocated 33 1/3% of the cost of cleanup to them. It did so because PERC is more toxic, and thus more harmful and difficult to remove, than TCA.
 
 
 10
 In the alternative, the District Court found Schloff Chemical and S.C.S.C. Corp. liable under MERLA. Only the costs of removal, as opposed to remediation, were recoverable under MERLA, however. Once again, the District Court allocated 33 1/3% of the costs to these defendants, because of the greater level of toxicity attributable to PERC. The District Court found that Irvin and Ruth Schloff were not liable under MERLA because they had not been negligent in their handling of PERC.
 
 
 11
 Finally, the District Court awarded Control Data 33 1/3% of its attorneys' fees and litigation expenses under both CERCLA and MERLA. The Supreme Court of the United States has since held that attorneys' fees are not response costs under CERCLA in most instances, and thus are not recoverable. Key Tronic v. United States, --- U.S. ----, ----, 114 S.Ct. 1960, 1967, 128 L.Ed.2d 797 (1994). MERLA, however, specifically allows prevailing parties to recover attorneys' fees and litigation expenses.
 
 
 12
 In this appeal, the Schloff defendants challenge the District Court's ruling on several grounds. First, they argue that they are not liable for those portions of the response costs that are the costs of investigation. Those costs, they argue, were caused by Control Data's release. Second, they argue that the District Court erroneously allocated 33 1/3% of the response costs to them. They initially dispute the finding that PERC is more toxic than TCA. They also question whether toxicity is a measure which may be used to increase allocation beyond the volume of pollution chargeable to a defendant. Finally, they argue that the award of attorneys' fees is erroneous.
 
 
 13
 Control Data cross-appeals the District Court's award of 33 1/3% of its attorneys' fees instead of 100%. It argues that the Schloff defendants should be responsible for all of its litigation expenses because, but for the Schloff defendants' refusal to contribute their fair share to the cleanup, it would have had no litigation expenses at all.
 
 II. CERCLA Framework
 
 14
 We begin our discussion, as we must, with the language of the statute. Recovery of response costs by a private party under CERCLA is a two-step process.[4] Initially, a plaintiff must prove that the defendant is liable under CERCLA. Once that is accomplished, the defendant's share of liability is apportioned in an equitable manner.
 
 
 15
 CERCLA liability is established under 42 U.S.C. Sec. 9607(a) (CERCLA Section 107(a)).
 
 
 16
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 
 
 17
 (1) the owner and operator of a vessel or a facility,
 
 
 18
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 
 
 19
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
 
 
 20
 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 
 
 21
 (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and]
 
 
 22
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....
 
 
 23
 Thus, in order to prove liability, a plaintiff must show that a defendant is within one of the four classes of covered persons enumerated in subsections (1) through (4); that a release or threatened release from a facility has occurred;[5] that the plaintiff incurred response costs[6] as a result; and that the costs were necessary and consistent with the national contingency plan.[7] 42 U.S.C. Sec. 9607; see United States v. Aceto Agricultural Chemicals Corp., 872 F.2d 1373, 1378-79 (8th Cir.1989).
 
 
 24
 A problematic portion of this calculus is the causation element. At the outset, we note that CERCLA does not require the plaintiff to prove that the defendant caused actual harm to the environment at the liability stage. Alcan Aluminum, 964 F.2d at 264-66. Harm to the environment is material only when allocating responsibility, as we discuss infra. Id. at 267-70. Instead, CERCLA focuses on whether the defendant's release or threatened release caused harm to the plaintiff in the form of response costs.[8] General Electric Co. v. Litton Industrial Automation Systems, Inc., 920 F.2d 1415, 1417 (8th Cir.1990), cert. denied, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). If so, and if the other elements are established, the defendant is liable under CERCLA.
 
 
 25
 Once liability is established, the focus shifts to allocation. Here, the question is what portion of the plaintiff's response costs will the defendant be responsible for? Allocation is a contribution claim controlled by 42 U.S.C. Sec. 9613(f) (CERCLA Section 113(f)).
 
 
 26
 Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) [42 U.S.C. Sec. 9607(a) ], during or following any civil action under section 106 [42 U.S.C. Sec. 9606] or under section 107(a) [42 U.S.C. Sec. 9607(a) ]. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate....
 
 
 27
 Id.
 
 
 28
 Courts have considered various factors in resolving contribution claims, see Nagle, CERCLA, Causation, and Responsibility, 78 Minn.L.Rev. 1493, 1522-23, n. 135 (1994), but the "Gore factors," so called after one of the sponsors of CERCLA, are the most widely used. The Gore factors are:
 
 
 29
 1. the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished;
 
 
 30
 2. the amount of hazardous waste involved;
 
 
 31
 3. the degree of toxicity of the hazardous waste;
 
 
 32
 4. the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;
 
 
 33
 5. the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and
 
 
 34
 6. the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.
 
 
 35
 Id. at 1522 n. 133. A primary focus of these factors is the harm that each party causes the environment. Id. at 1522. Those parties who can show that their contribution to the harm is relatively small in terms of amount of waste, toxicity of the waste, involvement with the waste, and care, stand in a better position to be allocated a smaller portion of response costs.
 
 
 36
 One primary goal of this private cost-recovery framework is to "encourage timely cleanup of hazardous waste sites," Litton Industrial, 920 F.2d at 1418. See also United States v. Mexico Feed & Seed Co., 980 F.2d 478, 486 (8th Cir.1992). Thus, this Court has consistently held that CERCLA is a strict-liability statute, imposing liability without regard to degree of care or motivation for the plaintiff's actions in initiating a cleanup. Litton Industrial, 920 F.2d at 1418. At the same time, CERCLA seeks "to place the cost of that response on those responsible for creating or maintaining the hazardous condition." Mexico Feed & Seed, 980 F.2d at 486. Therefore, in the allocation phase, harm to the environment and care on the part of the parties plays a more substantial role. Cf. Farmland Industries, 987 F.2d at 1342 n. 6.
 
 III. The Schloff Defendants' CERCLA Liability
 
 37
 The Schloff defendants argue that they should not be liable under CERCLA for that portion of the response costs which are attributable to the investigation of contamination on the Control Data site. They do not, however, challenge the District Court's determination that they are liable for a share of the cleanup costs. Simply put, the Schloff defendants argue that Control Data's release was the sole cause of the investigation. Thus, because the Schloff defendants' releases had nothing to do with initiating the investigation, they cannot be held liable. In order to accept the Schloff defendants' argument, we would have to hold that CERCLA imposes upon a plaintiff the requirement to prove that each type of response cost was separately caused by the defendant's release.
 
 
 38
 CERCLA simply cannot be read this strictly. First, the language of the statute precludes this holding. Under CERCLA, if a responsible party, as defined by subsections (1) through (4), releases hazardous materials into the environment, and that release "causes the incurrence of response costs," then the party is liable. 42 U.S.C. Sec. 9607(a). The question then becomes, liable for what? CERCLA's answer is that the party is liable for "any other necessary cost of response incurred by any other person consistent with the national contingency plan."[9] 42 U.S.C. Sec. 9607(a)(4)(B) (emphasis added). Thus, a plain reading of the statute leads us to the conclusion that once a party is liable, it is liable for its share, as determined by Section 9613(f), of "any" and all response costs, not just those costs "caused" by its release.
 
 
 39
 Second, the policy underlying CERCLA's private cost-recovery scheme precludes us from accepting the Schloff defendants' interpretation. As we noted previously, CERCLA's dual goals are to encourage quick response and to place the cost of that response on those responsible for the hazardous condition. Control Data quickly and efficiently responded to a perceived threat to the environment when it discovered its own release, thus fulfilling the first goal. In doing so, it discovered a second polluter, the Schloff defendants, who, in a perfect world according to CERCLA, should have reacted to their own releases much earlier. By not reacting and allowing the PERC plume to migrate, they became partially responsible for the hazardous condition of the Control Data site. Holding the Schloff defendants liable for a share of the costs of the investigation which uncovered their responsibility thus satisfies the second goal of CERCLA.
 
 
 40
 Under the Schloff defendants' interpretation, these goals would be frustrated. Control Data would have been better served simply to repair its own leak and do nothing about the contamination. Then, if another neighbor experienced a release which led to the discovery of the Control Data contamination, that third party would be liable for the entire cost of investigation. This result would offend CERCLA's goals. It would provide a disincentive for polluters to act quickly and aggressively to remedy the harm they have done in hopes that someone else will stumble upon their creation and be forced to bear the burden rightfully belonging to the original polluter.
 
 
 41
 Finally, the Supreme Court's most recent CERCLA decision convinces us that the Schloff defendants' argument must fail. In Key Tronic Corp. v. United States, --- U.S. ----, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), Key Tronic and others, including the United States Air Force, dumped hazardous chemicals into a landfill in Spokane County, Washington. When the resulting contamination was found in the surrounding groundwater supply, Key Tronic, on its own initiative, responded. See Key Tronic Corp. v. United States, 766 F.Supp. 865, 867 (E.D.Wash.1991), rev'd, 984 F.2d 1025 (9th Cir.1993), aff'd in part and rev'd in part, --- U.S. ----, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). Part of this response was Key Tronic's effort to identify other responsible parties. This effort resulted in an Environmental Protection Agency enforcement action against the Air Force. Key Tronic, --- U.S. at ----, 114 S.Ct. at 1967. The Supreme Court held that the costs attributable to this search, though paid to attorneys, were "recoverable costs of response clearly distinguishable from litigation expenses," which are not recoverable under CERCLA. Ibid. (footnote omitted).
 
 
 42
 The reasoning of the Supreme Court is particularly applicable to the case before us. "Tracking down other responsible solvent polluters increases the probability that a cleanup will be effective and get paid for. Key Tronic is therefore quite right to claim that such efforts significantly benefited the entire cleanup effort apart ... from the reallocation of costs." Key Tronic, --- U.S. at ----, 114 S.Ct. at 1967. Likewise, Control Data's efforts to identify all of the contaminants on its property "significantly benefited" the entire effort. Without that effort, the full extent of the contamination, including contamination restricted to the Schloff site not at issue in this case, might not have been discovered and remedied. Perhaps it is fortuitous for Control Data that it happened on to the Schloff defendants' contamination, just as it was fortuitous for Key Tronic to happen on to the Air Force's. Both circumstances are more fortuitous, however, for the environment, which is the primary and decisive factor under CERCLA. We must affirm the judgment of the District Court imposing liability on the Schloff defendants for all response costs, including the costs of investigation.
 
 
 43
 Irvin Schloff also argues that the District Court erred in holding him individually liable as an "operator" of a "facility." 42 U.S.C. Sec. 9607(a)(1), (2). We disagree. The District Court found Mr. Schloff liable as an operator, not merely because of his position as a corporate officer, but because of his control of the operations of Schloff Chemical, including the delivery, storage, handling, and transportation of PERC.
 
 
 44
 Irvin Schloff supervised the day-to-day operations of Schloff Chemical between 1963 and 1985. He remained as president with authority over those operations from 1985 until 1989. Included in those operations was the delivery, storage, handling, and transportation of dry-cleaning chemicals, including PERC. These findings are supported by ample evidence. Indeed, Mr. Schloff does not seriously challenge them. Rather, his dispute focuses on the legal conclusion drawn from these facts, that he is an "operator" under CERCLA.
 
 
 45
 This Court recently addressed the standard for establishing that an individual is an operator of a facility. In United States v. Gurley, 43 F.3d 1188 (8th Cir.1994), we held that CERCLA imposes operator liability when a person has "authority to determine when hazardous wastes [will] be disposed of and to determine the method of disposal, ... and actually exercises that authority, either by personally performing the tasks necessary to dispose of the hazardous wastes or by directing others to perform those tasks." Id. at 1195. As president of Schloff Chemical, Irvin Schloff had the necessary authority. His day-to-day control over the business for at least a portion of the time in question, as well as his ultimate control over those operations for the entire time, is sufficient to establish that he exercised that control. Mr. Schloff was responsible for "directing others" in the tasks of delivering, storing, handling, and transporting PERC. See Gurley, 43 F.3d at 1194 (detailing facts leading to operator liability). The District Court's judgment imposing liability on Irvin Schloff is affirmed.
 
 IV. Allocating Liability
 
 46
 The Schloff defendants challenge the District Court's allocation of one third of the response costs to them when they contributed only 10% of the volume of pollution. Their challenge is two-fold, arguing first that insufficient evidence existed to find PERC more toxic than TCA, and second that even if PERC is more toxic, it is an insufficient basis to use to increase liability. We disagree on both points.
 
 
 47
 CERCLA's allocation scheme "is an equitable determination, in which the district court must make its own factual findings and legal conclusions. We review the district court's factual findings under a clearly erroneous standard and its applications of law de novo." Gopher Oil Co. v. Union Oil Co., 955 F.2d 519, 526 (8th Cir.1992) (citations omitted).
 
 
 48
 In this case, the District Court based its finding that PERC is a more toxic chemical largely on the MPCA's requirement that it be cleaned up to a level of 7 parts per billion (ppb) existing in the groundwater supply, whereas TCA had to be cleaned up only to a level of 200ppb. Additionally, PERC is a carcinogen, whereas TCA is not. Finally, PERC is the more difficult substance to strip from the airstream in the remediation system. While the Schloff defendants correctly assert that no evidence was adduced from a licensed toxicologist, the evidence which was introduced was more than adequate to justify the District Court's finding that PERC is substantially more toxic than TCA.
 
 
 49
 The Schloff defendants also argue that toxicity should not be used to increase the allocation of liability without proof of additional costs associated with that toxicity. We first disagree with the assertion that the greater toxicity of PERC did not add to the cleanup costs. The District Court found that the presence of PERC influenced the design and construction of the remediation system, because it is harder to remove and must be removed to a lower level than TCA. The logical conclusion is that it will cost more to remove the pollution related to PERC than it will to remove an equal volume of TCA-related pollution.
 
 
 50
 In addition, the District Court justified its decision by noting that CERCLA seeks to remedy harm to the environment, and that the more toxic chemical causes the greater harm. We agree. Once again, CERCLA, in the allocation stage, places the costs of response on those responsible for creating the hazardous condition. Allocating responsibility based partially on toxicity does just that because those who release substances that are more toxic are more responsible for the hazardous condition. The District Court was fully justified in increasing the Schloff defendants' responsibility on the basis of toxicity.
 
 V. Attorneys' Fees Under MERLA
 
 51
 The final issue before us is the District Court's decision to require the Schloff defendants to pay 33 1/3% of Control Data's attorneys' fees. In Key Tronic, supra, the Supreme Court held that "CERCLA Sec. 107 does not provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action." Key Tronic, --- U.S. at ----, 114 S.Ct. at 1967. Thus, we must reverse that portion of the District Court's judgment awarding Control Data its attorneys' fees under CERCLA.[10]
 
 
 52
 On the other hand, a "prevailing party" under MERLA "may" recover "reasonable attorney fees and witness fees." Minn.Stat. Sec. 115B.14. The District Court, in the alternative, held that Schloff Chemical and S.C.S.C. Corp. (the Schloff Companies) must pay 33 1/3% of Control Data's attorneys' fees under MERLA. The Schloff Companies argue that the District Court erred in this ruling because Control Data was not a prevailing party. Control Data, in turn, argues that the District Court should have awarded it 100% of its fees. We disagree with both arguments.
 
 
 53
 At the outset, we must reject the Schloff Companies' assertion that Key Tronic in some way precludes awarding attorneys' fees pursuant to a state's environmental-cleanup statute. Key Tronic simply held that such a recovery is not available under CERCLA. That says nothing about recovery under a state statute. The Schloff Companies do not argue that CERCLA preempts MERLA.
 
 
 54
 The Schloff Companies also assert that Control Data is not a prevailing party under MERLA because the MERLA recovery was merely an alternative to the CERCLA award. Nothing was independently awarded under MERLA. Indeed, the Schloff Companies' liability under MERLA was less extensive than their liability under CERCLA. We review the District Court's determination of this state-law issue de novo. Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
 
 
 55
 MERLA precludes a "double recovery." Minn.Stat. Sec. 115B.13. Thus, a responsible party may not recover the same "response costs or damages" under two separate statutes, MERLA and CERCLA for example. Ibid. That does not mean that a plaintiff may not "prevail" under both statutes. That is what happened in this case. Control Data "prevailed" over all of the Schloff defendants on its CERCLA claim and over the Schloff Companies on its MERLA claims.
 
 
 56
 The Schloff Companies contend that this set of circumstances is not enough. A prevailing party must, in this sort of case, recover something under MERLA that cannot be recovered under CERCLA, damages for economic loss, for example. See Minn.Stat. Sec. 115B.05(1)(a). We must reject this argument. So long as the "legal theories advanced ... depended on proving a common core of facts," Control Data is a prevailing party under MERLA. Musicland Group v. Ceridian Corp., 508 N.W.2d 524, 535 (Minn.App.1993). Even a cursory comparison of CERCLA and MERLA reveals that proving either theory depends on, to say the least, a "common core of facts." Compare 42 U.S.C. Secs. 9607(a), 9613(f), with Minn.Stat. Secs. 115B.03(1), 115B.04(1), 115B.08.
 
 
 57
 The District Court found, and the Schloff Companies do not contest, that the Schloff Companies were responsible parties under MERLA who would, absent the CERCLA claim, be liable for response costs under MERLA. That is all that is necessary to establish that Control Data is a prevailing party. The award of fees must stand.
 
 
 58
 Under MERLA, the decision to award fees is a matter within the broad discretion of the District Court. "A reviewing court will intrude upon a trial court's award of fees only where there is a clear abuse of that discretion." Musicland, 508 N.W.2d at 535. The District Court held that it was equitable, for the reasons discussed in its allocation decision, to award Control Data 33 1/3% of its fees rather than 100%. This decision, given Control Data's greater contribution to the hazardous condition, and the fact that Control Data only partially prevailed on its MERLA claims, Hensley v. Eckerhart, 461 U.S. 424, 434-37, 103 S.Ct. 1933, 1940-41, 76 L.Ed.2d 40 (1983) (cited with approval by Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 541 (Minn.1986)), is not an abuse of discretion.
 
 VI.
 
 59
 The judgment of the District Court holding the Schloff defendants liable and imposing upon them an obligation to pay 33 1/3% of Control Data's response costs is affirmed. We also affirm the District Court's decision to award Control Data 33 1/3% of its attorneys' fees. We reverse that part of the judgment imposing liability for attorneys' fees under CERCLA.
 
 
 60
 Rather than awarding an amount of attorneys' fees, the District Court awarded a percentage and instructed the parties to settle on an amount. Also, the cleanup effort is still in process at the Control Data site, precluding a final determination of the dollar amount of the Schloff defendants' liability. We thus remand this case to the District Court for further proceedings consistent with this opinion.
 
 
 61
 It is so ordered.
 
 
 
 [1]
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota
 
 
 [2]
 Schloff Chemical was sold to W.E. Weinberg Supply Co. by Irvin and Ruth Schloff in 1989. Weinberg was originally a named defendant in this action, but reached a settlement with Control Data prior to trial
 The District Court found that another defendant, Musicland Group, Inc., was not liable. Control Data does not appeal that ruling.
 
 
 [3]
 The investigation led to the discovery of pollutants on the Schloff site as well. The MPCA required the Schloff defendants to clean up their own site. Since June of 1991, that effort has been directed by the MPCA because the Schloff defendants can no longer afford its cost
 
 
 [4]
 By contrast, an action by the federal government, a state, or an Indian tribe to recover response costs is a one-step process. Once liability is proved, all of the defendants are jointly and severally liable, unless a particular defendant can establish that his harm is divisible, a very difficult proposition. See United States v. Alcan Aluminum Corp., 964 F.2d 252, 267-71 (3d Cir.1992); Farmland Industries v. Morrison-Quirk Grain Corp., 987 F.2d 1335, 1340, 1342 n. 6 (8th Cir.1993)
 
 
 [5]
 "Release" is defined by 42 U.S.C. Sec. 9601(22) and is not an issue in this case
 
 
 [6]
 "Response" is defined by 42 U.S.C. Sec. 9601(25) and is not an issue in this case
 
 
 [7]
 We agree with the Second Circuit that the phrase "from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance" modifies paragraphs (1) through (4), as opposed to only paragraph (4), as the codified version would indicate. State of New York v. Shore Realty Corp., 759 F.2d 1032, 1043 n. 16 (2d Cir.1985). The Second Circuit held, and we agree, that paragraph (4), as originally drafted, should end with the words "selected by such person" and the above clause should begin on a new line, thus modifying all four paragraphs. The form in which it now appears is attributable to a printer's error. Ibid
 
 
 [8]
 The absence of a comma after "threatened release" in the phrase "from which there is a release, or a threatened release which causes response costs, of a hazardous substance" makes it at least questionable that there is a causation element at all in cases where there is an actual--as opposed to a threatened--release. We have previously indicated that, even when there is an actual release, a plaintiff must establish a causal nexus between that release and the incurrence of response costs. General Electric Co. v. Litton Industrial Automation Systems, Inc., 920 F.2d 1415, 1417-18 (8th Cir.1990). We have never addressed, however, the degree of connection necessary in such a case. Cf. Louisiana-Pacific Corp. v. Beazer Materials and Services, 811 F.Supp. 1421, 1426 (E.D.Cal.1993). Litton Industrial lends itself to a reading that the required connection may be slight indeed. We find it unnecessary to resolve this problem because the Schloff defendants' release is directly related to, i.e., directly caused, the incurrence of response costs by Control Data
 
 
 [9]
 The "other ... costs" and "other person" in this sub-subsection distinguish private parties and their costs from costs of the United States Government, a State or an Indian tribe in subparagraph (A). That Control Data's costs were "necessary" and "consistent with the national contingency plan" is not disputed
 
 
 [10]
 The Supreme Court, in Key Tronic, noted an exception to this rule when the costs cover activities such as tracking down those responsible for pollution in order to seek contribution from them. Fees such as these are recoverable "because they are not incurred in pursuing litigation," Key Tronic, --- U.S. at ----, 114 S.Ct. at 1967 (quoting FMC Corp. v. Aero Industries, Inc., 998 F.2d 842, 847 (10th Cir.1993)), and "benefit[ ] the entire cleanup effort and serve[ ] a statutory purpose apart from the reallocation of costs." Ibid. Control Data has not argued that this exception, potentially broad though it may be, applies to this case