RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0303P (6th Cir.)
File Name: 01a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BOB'S BEVERAGE, INC.;
ULLMAN OIL, INC.,
  *Plaintiffs-Appellants,*

   *v.*

ACME, INC.; JAMES BARES,
individually and in his
capacity as president and
shareholder of Acme, Inc.,
  *Defendants,*

ALBATROSS, LTD.; BENJAMIN
H. MERKEL; HENRY MERKEL,
  *Defendants-Appellees.*

No. 00-3045

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-00650—Patricia A. Hemann, Magistrate Judge.

Argued: August 3, 2001

Decided and Filed: September 4, 2001

1

Before:  CLAY and GILMAN, Circuit Judges; WISEMAN, Senior District Judge.[*]

---

**COUNSEL**

**ARGUED:**    Charles  P.  Royer,  KAUFMAN  &
CUMBERLAND, Cleveland, Ohio, for Appellants. Irene C.
Keyse-Walker, ARTER & HADDEN LLP, Cleveland, Ohio,
for Appellees. **ON BRIEF:**  Charles P. Royer, KAUFMAN
& CUMBERLAND, Cleveland, Ohio, for Appellants. Carter
E. Strang, ARTER & HADDEN LLP, Cleveland, Ohio,
Thomas M. Stickney, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

WISEMAN, Senior District Judge.  Bob's Beverage, Inc.
and Ullman Oil, Inc. ("Appellants") appeal the district court's
finding of no liability against Appellees Albatross, Ltd.,
Benjamin H. Merkel, Henry Merkel ("Appellees" or "Merkel
Defendants").  Specifically, the Appellants argue that the
district court erred in denying its cost recovery claim against
the Merkel Defendants.  For the reasons stated herein, we
**AFFIRM** the district court's denial of Appellants' cost
recovery claim.

**I.**

On or about July 1, 1960, Raymond and Nancy Hitchcox
purchased the property at 9812 East Washington Street in
Chagrin Falls, Ohio (the "Property").  Prior to their
ownership, the Property was vacant land.  During their

---

[*] The Honorable Thomas A. Wiseman, Jr., Senior United States
District Judge for the Middle District of Tennessee, sitting by designation.

Cir. 2000), held that passive migration does not constitute a Disposal within the meaning of CERCLA. Thus, the failure of the Merkel Defendants to prevent passive migration of hazardous substances during their ownership does not constitute a Disposal and does not make them liable under CERCLA.

### V.

Based on the foregoing, the district court's finding of no liability on the part of the Merkel Defendants is **AFFIRMED**.

ownership of the Property, the Hitchcoxes built a warehouse (the "Facility") on the Property and installed a septic system. The septic system consisted of one underground tank and two dry wells. Effluent from the septic tank flowed automatically through pipes into the two dry wells. The design of the dry wells placed effluent in the subsurface of the Facility.

In 1974, the Hitchcoxes leased the Property to Acme, Inc. ("Acme"), of which James Bares ("Bares") was the president and sole shareholder. Acme and Bares (collectively the "Acme Defendants") operated their business of rebuilding component parts for automobile air conditioners until approximately 1980. The Acme Defendants' manufacturing processes used chlorinated solvents including perchloroethane, trichloroethylene, tricholoroethene, and 1,1,1 trichloroethane (collectively "chlorinated solvents" or "CVOCs") and caustic soda. Both CVOCs and caustic soda are hazardous substances.

Initially, the Acme Defendants discharged the waste water from the manufacturing to the septic system at the Facility through a series of floor trenches and pipelines. The waste water that was placed in the septic system flowed first into the septic tank and then into the two dry wells for its injection into the subsurface soil and water. Some CVOCs entered the soil behind the building from the septic system. Later, the Acme Defendants removed the waste water from the septic system and directly discharged untreated waste water onto the surface of the Property.

The Acme Defendants used and stored spent solvents, waste oil, sludge from cleaning operations, and spent caustics in 55-gallon drums at the Facility. These drums were stored outside, behind the Facility on the Property. In addition, drums of spent solvents, parts and other waste materials from the Acme Defendants' previous place of business were transported to the Property. Although the Acme Defendants apparently knew that the drums were in poor condition and leaking, nothing was done to repair them.

Spent solvents and other materials were released from the 55-gallon drums to the soils and groundwater of the Property. The soils and groundwater in the area where the drums were stored have been identified as a hotspot for CVOCs discovered during a Remedial Investigation by the Environmental Protection Agency ("EPA"). When the Acme Defendants ceased their operations, they abandoned the 55-gallon drums stored at the facility.

On September 3, 1981, Huntington National Bank ("Huntington") purchased the Property and subsequently sold it to the Merkel Defendants on or about August 13, 1982. The Merkel Defendants conducted no environmental investigation prior to the purchase of the property. Approximately twenty-five 55-gallon drums were on the property when the Merkel Defendants purchased it in 1982.

The Merkel Defendants used the Property for storage of automobiles. The Merkel Defendants inherited a septic system that was not functional and was below government standards. Two years later, the Merkel Defendants decided to upgrade the system.

When the septic system was opened in association with the upgrade, the tank was coated with a thick, greasy film which confirmed that the septic system had been previously used for the disposal of materials other than sanitary sewage. In addition, the dry wells had been bypassed and a pipe had been installed leading from the septic tank directly to the stream in the back of the Property.

At the time of the septic installation, no environmental tests or analysis were performed on the material in the septic system. When the septic system was upgraded, the Merkel Defendants installed a leachfield for the disposal of septic waste where the drums had been previously stored. During that installation, large quantities of soil in the drum area were moved.

failure of the Merkel Defendants to remove the contaminants from the Property when they had knowledge of their existence resulted in the passive migration of CVOCs and thus constituted a Disposal.

Under CERCLA, a Disposal occurs when "[t]he discharge, deposit, injection, dumping, splitting, leaking, or placing of any solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. §9601(29)(quoting RCRA, 42 U.S.C. §6903(3); *United States v. 150 Acres of Land*, 204 F.3d 698 (6th Cir. 2000).

A Disposal is not the same as a release. *150 Acres*, 204 F.3d at 705-06. The term "release" is broader than Disposal. *Id.* A Disposal requires evidence of "active human conduct," and addresses "activity that precedes the entry of a substance into the environment." *Id.* In addition, cross contamination (causing the spread of contamination "into or on" previously uncontaminated "soil or water") by a former owner/operator constitutes a Disposal. *See United States v. CDMG Realty Co.*, 96 F.3d 706, 719 (3d Cir. 1996); *Tanglewood East Homeowners v. Charles Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir. 1998).

Appellants' first claim that the replacement of the septic tank caused a Disposal is clearly unsupported by the record. The CVOCs were already present and there is no evidence that any active human conduct on the part of the Merkel Defendants resulted in any additional contamination to the Property. Also, there is no evidence of cross contamination in the record. Thus, the Merkel Defendants did not create a Disposal by replacing the septic system.

Appellants' second claim that a Disposal occurred through passive migration on the Property during the ownership of the Merkel Defendants is also without merit. This Court, in *United States v. 150 Acres of Land*, 204 F.3d 698, 704 (6th

incurred by the Appellants.  In fact, with the release of CVOCs from the soil resulting from the replacement of the septic system, the Merkel Defendants may have reduced the response costs of the Appellants, albeit infinitesimally.

Because Appellants have failed to demonstrate that a release by the Merkel Defendants affected the Appellants' response costs, Appellants have failed to prove their cost recovery cause of action.  The holding of the district court therefore is **AFFIRMED**.

## IV.

Even if the Court were to decide that Appellants could survive the causation inquiry, the the Appellants are still unable to prevail under the fourth prong of cost recovery under *Pierson* and CERCLA. Both of Appellants' arguments that a Disposal occurred fail, and as a result, district court's holding would still be **AFFIRMED** for the reasons that follow, even if Appellants could establish causation.

CERCLA defines the four categories of persons, also known as PRPs, who may be liable under CERCLA to include (1) the current owner/operator of a facility from which there has been a release; (2) a person "who at the time of disposal or treatment of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of"; (3) generators of hazardous waste; and (4) arrangers for the disposal of hazardous waste.  *See* 42 U.S.C. §9607(a)(1-4).

Appellants argue that the Merkel Defendants are persons "who at the time of disposal or treatment of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of." *Id.* Specifically, the Appellants assert that at the time of the Merkel Defendants' ownership of the Property, two instances where hazardous substances were disposed of ("Disposals") occurred.  First, the Appellants claim that the replacement of the septic tank caused a Disposal.  In addition, the Appellants argue that the

In September 1987, the Merkel Defendants had six drums of "waste oil" removed from the back of the Property.  In May 1988, the Merkel Defendants sold the Property to Appellant Bob's Beverage, Inc.  On July 8, 1988, Appellant Ullman Oil, Inc. became the operator of the Property.  Appellant Bob's Beverage did not conduct any assessment of the environmental condition of the Property prior to its purchase. It had owned and operated the adjacent property and did not know that the Property had fuel oil in the subsurface.

Appellant Ullman Oil, Inc. uses the Property for the storage of petroleum and petroleum distillate products and for office space.  Neither of the Appellants ever used, stored, treated, or disposed of chlorinated solvents at either East Washington Street property.

In November 1988, it was discovered that the drinking water on the Property and on adjacent properties was contaminated with CVOCs and heavy metals.  Ullman notified the Ohio Environmental Protection Agency ("Ohio EPA") and took interim remedial action, including providing an alternate water supply to the Facility and to affected neighbors. Bob's Beverage entered into a Consent Order with the Ohio EPA requiring Bob's Beverage to complete a Remedial Investigation and Feasibility Study for the Property. The Remedial Investigation and Feasibility Study are complete.  The written reports documenting them have been accepted by the Ohio EPA.  The Ohio EPA has not yet selected a final remedy.

## II.

The Appellants filed their initial complaint on March 12, 1997, against the Merkel Defendants, alleging violations of sections 107(a) and 113(f)[1] of the Comprehensive

---

[1] The Appellants proceeded under 42 U.S.C. §9607(a) and not 42 U.S.C. §9613(f)(1) because the trial court found that the Appellants were innocent landowners in accordance with 42 U.S.C. §9607(b)(3).

Environmental Response, Compensation and Liability Act ("CERCLA"). After the Court rejected the Merkel Defendants' Motion to Dismiss, the Merkel Defendants filed a cross claim against the Acme Defendants. All parties then moved for summary judgment which the district court denied in an opinion on January 29, 1999, because there were genuine issues of fact concerning whether there was a disposal of any hazardous waste during each party's ownership of the Property.

A trial was held on Appellants' CERCLA claims on February 22-24, 1999. On December 1, 1999, the district court issued Findings of Fact, Conclusions of Law, and a Judgment against the Acme Defendants in the amount of $411,467.44. The court found that the Merkel Defendants were not liable. The Appellants timely filed their notice of appeal challenging the Court's holding that the Merkel Defendants were not liable.

### III.

On appeal, the Appellants argue that the trial court erred in denying its cost recovery claim against the Merkel Defendants. This Court reviews *de novo* the trial court's conclusions of law. *See Carter Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir.1999). This Court similarly reviews mixed questions of fact and law *de novo*. *See Wooldridge v. Marlene Indus., Corp.*, 875 F.2d 540, 545 (6th Cir.1989). In addition, the district court's factual findings are reviewed for clear error. *See id.*

To establish a prima facie cost recovery claim under 42 U.S.C. § 9607(a), also known as CERCLA § 107(a), a plaintiff must prove: (1) a release[2] or threatened release has

---

[2] A release is defined as any: "[s]pilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing

occurred at a "facility"; (2) the release or threatened release caused the incurrence of the Plaintiffs' response costs; (3) the response costs were necessary and consistent with the National Contingency Plan ("NCP"); and (4) that the defendant falls within one of the four categories of covered person who may be held liable, i.e., a potentially responsible party ("PRP"). *Pierson Sand & Gravel, Inc. v. Pierson Township*, 43 E.R.C. 1559 (6th Cir. 1996); 42 U.S.C. § 9607(a).

The district court determined, and the parties do not dispute, that the Property is a "facility" within the meaning of CERCLA. The district court further held that any release that occurred during the ownership of the Merkel Defendants did not cause the incurrence of the Appellants' response costs.

Citing *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930 (8th Cir. 1995), Appellant argues that the district court erred in that determination because CERCLA does not require the plaintiff to prove that the defendant caused actual harm to the environment at the liability stage. *Id.* at 935 (citing *Alcan Aluminum*, 964 F.2d 252, 264-66 (3d Cir. 1992)); *Dedham Water Co. v. Dedham Westwood Water Dist.*, 889 F.2d 1146, 1154 (1st Cir. 1989); *B.F. Goodrich v. Dow Corning*, 99 F.3d 505, 514 (2d Cir. 1996). Appellant is correct in recognizing that it does not need to establish that the Merkel Defendants' waste caused or contributed to the response costs. Appellants, however, failed to read the next sentence in *Control Data*, which notes that "CERCLA focuses on whether the defendant's release or threatened release caused harm to the plaintiff in the form of response costs." *Control Data*, 53 F.3d at 935. This is exactly the inquiry that the district court undertook. It found that there was no evidence that any release that occurred during the ownership of the Merkel Defendants caused any increase in the response costs later

---

any hazardous substance or pollutant or contamination)." 42 U.S.C. §9601(22).