54 F.3d 478
 31 Fed.R.Serv.3d 1300
 FARMLAND INDUSTRIES, INC., Appellees,
v.
MORRISON-QUIRK GRAIN CORPORATION, a dissolved Nebraska
Corporation; Morrison Enterprises, a Nebraska
Partnership, Appellant.
FARMLAND INDUSTRIES, INC., Appellant,
v.
MORRISON-QUIRK GRAIN CORPORATION, a dissolved Nebraska
Corporation; Morrison Enterprises, a Nebraska
Partnership, Appellees.
 Nos. 94-1574, 94-1648.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1995.
Decided May 8, 1995.
 
 William T. Session, Kansas City, MO, argued (Morgan O'Regan Hogerty and Scott O. Davis, on the brief), for appellant.
 Alvin D. Shapiro, Kansas City, MO, argued (Terry R. Wittler and Edmund S. Gross, on the brief), for appellees.
 Before BOWMAN, BEAM and HANSEN, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 Disappointed with the results obtained in two previous trials, Morrison Enterprises and Farmland Industries[1] each ask this court for a third chance to obtain favorable verdicts. The parties appeal jury verdicts which deny them recovery for response costs incurred under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. Secs. 9601 et seq. (CERCLA). We affirm.
 
 I. BACKGROUND[2]
 
 2
 Morrison Enterprises ("Morrison") operated a grain storage and handling business at the FAR-MAR-CO subsite, which it owned, from 1954 to 1975. In connection with the grain storage business, Morrison stored liquid grain fumigants, including Max-Kill 10, in a 3000- to 4000-gallon tank on top of one of the grain elevators. Max-Kill 10 contains two hazardous substances, carbon tetrachloride and ethylene dibromide. See 42 U.S.C. Sec. 9601(14). A grain dust explosion in 1959 dislodged the Max-Kill storage tank from its position on top of the grain elevator. Insurance claims filed at that time indicated that 940 gallons of Max-Kill 10 were lost due to the explosion.
 
 
 3
 In 1975, Farmland Industries ("Farmland") purchased the subsite, including the storage tank containing Max-Kill 10, from Morrison. The storage tank contained approximately 2500 gallons of Max-Kill 10 when Farmland purchased it. Sometime between 1982 and 1983, Farmland discovered that the Max-Kill storage tank was empty.
 
 
 4
 In 1986, the large amount of soil and ground contamination discovered at and around the FAR-MAR-CO subsite prompted the Environmental Protection Agency (EPA) to designate it as a "Superfund" site. In 1988, the United States brought a CERCLA action against Morrison to recover past and future response costs. The district court granted the United States partial summary judgment on its claims. Morrison entered into a consent decree with the government resolving its liability in late 1992.
 
 
 5
 Shortly after the government filed suit against Morrison in 1988, Farmland filed a declaratory judgment action against Morrison. Farmland sought a determination that Morrison was responsible for any response costs incurred by Farmland to clean up the FAR-MAR-CO site. Morrison filed a counterclaim against Farmland seeking recovery for its past and future costs.
 
 
 6
 After hearing all of the evidence, the jury returned a verdict for Morrison on Farmland's claim, and a verdict for Farmland on Morrison's counterclaim. The district court denied the parties' post-trial motions and entered judgment according to the jury verdicts. The parties appealed to this court. We found the jury instructions given in the first trial deficient, and we remanded the case for a new trial. Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., 987 F.2d 1335 (8th Cir.1993) (Farmland I ). The second trial produced the same results as the first trial. The parties now return to this court, contending that the district court inadequately resolved certain aspects of the second trial.
 
 II. ANALYSIS
 A. Morrison's Appeal
 
 7
 Morrison makes numerous arguments on appeal. It contends that the district court erred by 1) failing to dismiss Farmland's contribution[3] claim because Farmland did not properly plead its cause of action, 2) failing to find that CERCLA's contribution protection provision barred Farmland's contribution claim, 3) erroneously permitting an expert witness to testify about matters not specified in the pre-trial order, and 4) failing to grant certain of Morrison's motions. We will address each of these arguments in turn.
 
 1. Proper Pleading
 
 8
 Despite the two full trials and one previous appeal, Morrison contends that Farmland's action should be dismissed because Farmland did not properly plead that it was seeking response costs consistent with the National Contingency Plan (NCP). NCP compliance is a prerequisite for recovery of response costs under CERCLA. See 42 U.S.C. Sec. 9607(a)(4)(B).
 
 
 9
 Admittedly, Farmland's complaint does not state that it was seeking response costs consistent with the NCP. Such an omission, however, is not automatic cause for dismissal of Farmland's claim. NCP compliance was clearly in issue at the second trial.[4] Morrison raised compliance with the NCP as an affirmative defense to Farmland's complaint. The parties discussed the NCP at the second pre-trial conference, and the resulting pre-trial order lists NCP compliance as a controverted issue. Both parties presented evidence on the matter at trial.
 
 
 10
 When issues missing from a complaint are tried by express or implied consent of the parties, "this consent acts to permit what is in effect a constructive amendment of the pleadings to include those issues." Walton v. Jennings Comm. Hosp., Inc., 875 F.2d 1317, 1321 n. 3 (7th Cir.1989). See Fed.R.Civ.P. 15(b). Permitting this constructive amendment conserves judicial resources and is consistent with our liberal system of pleading. Karlen v. Ray E. Friedman & Co. Commodities, 688 F.2d 1193, 1197 n. 3 (8th Cir.1982). We conclude that constructive amendment cures any ills in Farmland's complaint. Additionally, because the pre-trial order supersedes the allegations in the complaint, at least in part, it amends the pleadings to include the NCP issue.
 
 2. Contribution Protection
 
 11
 As indicated, Morrison entered into a consent decree with the United States government in which Morrison agreed to compensate the government for past and future response costs related to the FAR-MAR-CO subsite. Morrison argues that under a CERCLA contribution provision, this consent decree bars Farmland from obtaining contribution.
 
 
 12
 CERCLA provides contribution protection for matters addressed in a consent decree. 42 U.S.C. Sec. 9613(f)(2). This contribution protection applies in suits by private parties against a party that has settled with the government. See, e.g., United States v. Colorado & E. R.R., 50 F.3d 1530, 1535-38 (10th Cir.1995); Dravo Corp. v. Zuber, 13 F.3d 1222, 1226 (8th Cir.1994) (construing 42 U.S.C. Sec. 9622(g)(5), an analogous CERCLA contribution protection provision). Assuming that the matters addressed in Morrison's consent decree include the type of response costs Farmland is seeking, the district court may have erred in permitting some or all of Farmland's contribution claim to proceed. See Colorado & E. R.R., 50 F.3d at 1536-38.
 
 
 13
 We need not reach this issue, however, because, in any event, a new trial is not required. Morrison has not alleged any cognizable harm due to the jury's consideration of Farmland's claim. Morrison was not held liable in Farmland's contribution action. Nonetheless, Morrison argues that it was prejudiced by the jury's consideration of Farmland's contribution claim because Farmland was permitted to present causation evidence that should have been kept out. We disagree. Farmland was free to introduce the allegedly prejudicial causation evidence, regardless of whether it could proceed on its own contribution claim, when defending itself on Morrison's contribution action.
 
 3. Expert Testimony
 
 14
 During the limited discovery before the second trial, the parties designated their expert witnesses, and, pursuant to Rule 26 of the Federal Rules of Civil Procedure, stated the substance of those witnesses' testimony. Farmland designated Dr. Jury, who had testified at the previous trial, as an expert witness. However, Farmland did not state that Dr. Jury would testify as to the causal connection between the specific release events and the present day contamination. Apparently uncertain of the scope of Dr. Jury's testimony, Morrison asked to take his deposition again. At that time, Dr. Jury gave his opinion about the cause of the present day contamination.
 
 
 15
 Morrison made a motion in limine to prevent Dr. Jury from testifying about causation, contending that permitting Dr. Jury to testify on previously undesignated issues would violate Rule 26(e) and be manifestly unjust and prejudicial. The district court refused to grant that motion. Morrison raises the same fairness concerns here.[5]
 
 
 16
 As with all discovery matters, the district court maintains broad control over Rule 26(e) issues regarding the disclosure of the substance of an expert's testimony. We will not reverse a district court's decision in this area "absent a 'gross abuse of discretion resulting in fundamental unfairness in the trial of the case.' " SDI Operating Partnership, L.P. v. Neuwirth, 973 F.2d 652, 655 (8th Cir.1992) (quoting Wilson v. Beloit Corp., 921 F.2d 765, 768-69 (8th Cir.1990)). We do not find such an abuse of discretion here.
 
 
 17
 Morrison was extremely familiar with Dr. Jury and his testimony. Dr. Jury testified at the first trial that he believed that the 1959 explosion was the only possible source of chemical introduction into the ground. When Morrison first realized that Dr. Jury would discuss causation at the second trial, Morrison took Dr. Jury's deposition and further explored his testimony. This additional deposition provided Morrison with adequate information to cure any deficiencies in Farmland's designation. Accordingly, the district court found that Morrison was neither surprised nor confused at the substance of Dr. Jury's testimony. This lack of surprise prevented prejudice from occurring. The district court did not err in permitting Dr. Jury to testify regarding present day contamination.
 
 4. Catch-All Objections
 
 18
 Finally, Morrison's brief contains a number of catch-all objections which purportedly demonstrate error. Morrison argues that the district court erred in: 1) submitting Farmland's claims to the jury; 2) failing to enter judgment in Morrison's favor on Morrison's claims; and 3) refusing to grant Morrison's motion for renewed judgment as a matter of law, or alternatively, Morrison's motion for a new trial. These objections all stem from Morrison's contention that Farmland did not present any evidence of present day contamination. Because demonstrating present day contamination is a requirement for recovery, Morrison reasons that this case is fatally flawed.
 
 
 19
 Without fully reaching Morrison's underlying contention, we find each of Morrison's arguments lacking. First, Morrison contends that the court's submission of Farmland's claim to the jury was prejudicial error. As previously indicated, however, the jury did not return a verdict for Farmland on Farmland's claim. We will not overturn a ruling or decision if we find that any error that existed was harmless. See Fed.R.Civ.P. 61. Because the jury did not hold Morrison liable for contribution to Farmland, we find that the error, if any, was harmless.
 
 
 20
 Next, Morrison contends that the district court improperly refused to enter judgment as a matter of law in Morrison's favor on Morrison's claim for contribution. However, Morrison did not move for judgment on its claim at either the close of its own case-in-chief or at the close of all the evidence.[6] Absent a proper motion, a district court is not compelled to rule.
 
 
 21
 This same procedural default renders Morrison's post-trial "renewed motion for judgment as a matter of law" improper. A post-verdict motion is not valid unless it has been preceded by a motion for judgment as a matter of law made at the close of all the evidence. Smith v. Ferrel, 852 F.2d 1074, 1075 (8th Cir.1988); Fed.R.Civ.P. 50(b). As Morrison did not make a motion on its claim at the close of all the evidence, its post-trial motion was procedurally infirm and we will not review it.
 
 
 22
 Alternatively, Morrison contends that the district court erred in failing to grant its motion for a new trial. Morrison claims that the district court should have granted Morrison a new trial on its claim against Farmland "because the verdict of the jury that neither party solely caused the contamination was patently inconsistent with the only causation evidence of present day contamination presented at trial." Appellants' Brief at 32.
 
 
 23
 We apply a deferential standard in reviewing a district court's decision to deny a new trial motion, generally not reversing unless the court's decision represents a clear abuse of discretion or a new trial is necessary to avoid a miscarriage of justice. Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir.1994). Under this standard, reversal is not warranted. Morrison's testimony about present day contamination was not, as it claims, entirely unimpeached, and the jury could certainly refuse to find that testimony credible. More significantly, both Morrison and Farmland argued that the other party solely caused the contamination of the FAR-MAR-CO site. As such, "[i]t was certainly possible for a rational jury to conclude that neither party carried its burden of proof that the other party solely caused the contamination at the sub-site. That is a risk inherent in an all or nothing argument." Farmland I, 987 F.2d at 1344. Given these possible scenarios, the district court's denial of Morrison's new trial motion is not an abuse of discretion.
 
 B. Farmland's Appeal
 
 24
 Farmland filed its appeal as a conditional cross-appeal, which requires discussion only if we reverse on any of Morrison's grounds. Trudeau v. Wyrick, 713 F.2d 1360, 1369 (8th Cir.1983). Because we affirm, we will not address the conditional cross-appeal.
 
 III. CONCLUSION
 
 25
 The judgment below is affirmed.
 
 
 
 [1]
 "Morrison Enterprises is the successor to Morrison-Quirk Grain Corporation. Farmland Industries is the successor to FAR-MAR-CO Inc. For the purposes of this litigation, the parties have stipulated that as successor corporations they are responsible for the CERCLA liability of their predecessors." Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., 987 F.2d 1335, 1337 n. 1 (8th Cir.1993) (Farmland I )
 
 
 [2]
 The facts of this case are hotly contested. For background information, we rely heavily on the statement of uncontroverted facts in our previous case, Farmland I
 
 
 [3]
 As we explained in our previous opinion, classifying the parties' claims as "contribution" actions is technically improper because each party seeks to hold the other fully responsible. Farmland I, 987 F.2d at 1338 n. 3. However, for the sake of simplicity we will use the term "contribution" because the parties are proceeding under CERCLA's contribution provisions
 
 
 [4]
 Although the parties probably considered NCP issues at the first trial (NCP compliance was Morrison's affirmative defense), we are relying solely on the use of NCP issues at the second trial
 
 
 [5]
 As a preliminary matter, we reject Farmland's assertion that this issue is not properly preserved for review. Before Dr. Jury testified at the second trial, Morrison renewed its objection to his testimony regarding causation. This is a sufficient objection
 
 
 [6]
 Morrison did, however, move for judgment in its favor on Farmland's claim. The district court's decision to deny that motion is not at issue here