925 F.Supp. 624 (1996)
LAIDLAW WASTE SYSTEMS, INC., et al., Plaintiffs,
v.
MALLINCKRODT, INC., et al., Defendants.
No. 4:95-CV-2033 CAS.
United States District Court, E.D. Missouri, Eastern Division.
May 6, 1996.
*625 *626 R. Henry Branom, Jr., Jason M. Rugo, Ronald E. Jenkins, Jenkins and Kling, St. Louis, MO, for plaintiffs Laidlaw Waste Systems, Inc., Laidlaw Waste Systems (Belleville), Inc.
Richard J. Pautler, Partner, Peper and Martin, St. Louis, MO, for defendants Mallinckrodt, Inc., Mallinckrodt Chemical, Inc.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Mallinckrodt, Inc. and Mallinckrodt Chemical, Inc., formerly known as Mallinckrodt Specialty Chemicals Company (collectively "defendants"). Plaintiffs Laidlaw Waste *627 Systems (Belleville), Inc. and Laidlaw Waste Systems, Inc. oppose the motion. This is a civil action for cost recovery, contribution, declaratory and monetary relief pursuant to sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9607, 9613; the Declaratory Judgment Act, 28 U.S.C. § 2201(a); and state common law.
Defendants have submitted matters outside the pleadings in support of portions of their motion to dismiss. A motion to dismiss pursuant to Rule 12(b)(6) "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." Woods v. Dugan, 660 F.2d 379, 380 (8th Cir.1981) (per curiam). As plaintiffs have had an adequate opportunity to respond to defendants' motion, and have based some of their arguments on documents submitted by defendants, the Court will treat the motion, to the extent appropriate, as one for summary judgment. See Davis v. Johnson Controls, Inc., 21 F.3d 866, 867 (8th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994); Angel v. Williams, 12 F.3d 786, 788-89 (8th Cir.1993); Gibb v. Scott, 958 F.2d 814, 816 (8th Cir.1992). In so doing, the Court will apply the following standards.
Dismissal Standard. When ruling on a motion to dismiss, this Court must take the allegations of the complaint as true. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). The complaint must be liberally construed in a light most favorable to the plaintiff. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir.1994); Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the offense necessary for recovery. Roberts v. Walmart Stores, Inc., 736 F.Supp. 1527, 1528 (E.D.Mo. 1990). "A complaint is sufficient if it contains allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. (internal quotations and citation omitted). Therefore, a motion to dismiss a complaint should not be granted unless it appears beyond doubt' that the plaintiff can prove no set of facts which would entitle him or her to relief. Coleman, 40 F.3d at 258; Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir.1993).
Summary Judgment Standard. The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510; Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
Facts. With these principles in mind, the Court turns to an examination of the facts. Plaintiffs are Laidlaw Waste Systems (Belleville) *628 Inc. ("Laidlaw Belleville"), a Missouri corporation, and Laidlaw Waste Systems, Inc. ("Laidlaw"), a Delaware corporation (collectively "plaintiffs"). Plaintiffs filed this action on October 26, 1995, seeking recovery from defendants for response costs and damages plaintiffs allegedly incurred arising out of the release and/or threatened release of hazardous substances at a licensed and permitted sanitary landfill site (the "Site") owned and operated by Laidlaw Belleville, and for a declaration of defendants' liability for future response costs and damages which plaintiffs will incur at and in connection with the Site.
Plaintiffs allege that between October 1983 and May 1991, Laidlaw Belleville owned and operated the Site. During this time, the Illinois Environmental Protection Agency ("IEPA") issued a supplemental waste stream permit to Laidlaw Belleville which authorized it to accept and dispose at the Site filter waste material generated by defendants. The waste material was described as celite/darco filter cake ("filter cake") and was classified as a non-hazardous waste.
Defendants arranged with plaintiff for the disposal of filter cake based on defendants' representations that the filter cake was non-hazardous waste. Between October 1983 and May 1991, defendants sent numerous shipments of waste (including filter cake) to the Site, through Laidlaw as transporter. Laidlaw Belleville accepted and disposed of these shipments at the Site. During this time, defendants certified to plaintiffs and IEPA that the filter cake was a non-hazardous waste. Defendants later revealed that a portion of the filter cake transported to the Site was a hazardous waste within the meaning of § 101(14) of CERCLA,[1] because it had higher than allowable levels of barium and chromium.
Plaintiffs allege that there have been releases or threatened releases of hazardous substances from the Site, caused by practices and actions of defendants. Plaintiffs allege they have incurred costs in excess of $50,000.00 in responding to the releases and threatened releases, and will continue to incur necessary response costs to remove and remedy future releases or threats of release, as required by a Consent Order between Laidlaw Belleville and the State of Illinois. Plaintiffs allege they have not conducted or knowingly permitted generation, storage, treatment or disposal of hazardous substances at the Site.
The Consent Order between Laidlaw Belleville and the State of Illinois was entered June 28, 1995, in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, in People of the State of Illinois v. Laidlaw Waste Systems (Belleville) Inc., Case No. 94-CH-182 (See Exh. C to Defts.' Mem.Supp.Mot.Dismiss.) Laidlaw Belleville did not admit any violation by entering into the Consent Order, see id. at p. 1, but the Consent Order may be used in any future enforcement action as evidence of a past adjudication of violation of the Illinois Environmental Protection Act. (Id., at pp. 1-2.)
The corporate predecessor of Mallinckrodt Chemical, Inc. also entered into a Consent Order with the State of Illinois, in People of the State of Illinois v. Mallinckrodt Specialty Chemicals Company, Case No. 92-CH-58 (See Exh. B to Defts.' Mem.Supp.) The Consent Order was based on an action to recover civil penalties, not to recover response costs. As part of the Consent Order, Mallinckrodt Chemical, Inc.'s corporate predecessor did not admit any violation, and no issue of law or fact was adjudicated. (Id. p. 1.)
Discussion. In the Complaint, plaintiffs asserts claims for declaratory relief under § 107 of CERCLA (Count I); damages under § 107 of CERCLA (Count II); contribution under § 113 of CERCLA (Count III, pleaded in the alternative to Count II); breach of contract/warranty (Count IV); misrepresentation (Count V); nuisance (Count VI); negligence (Count VII); and negligent misrepresentation (Count VIII). Defendants move to dismiss each count of the Complaint.

I.
Defendants first move to dismiss Counts I and II, plaintiffs' claims under *629 § 107 of CERCLA. Defendants' primary argument is that plaintiffs lack standing to bring a cost recovery action under Section 107, because plaintiffs are liable parties under CERCLA,[2] and a liable party cannot bring an action under Section 107. The Court treats this aspect of defendants' motion as a motion for summary judgment because defendants refer to matters outside the pleadings in support of their motion.
Section 107(a) sets forth the scope of liability which may be imposed on private parties and the defenses they may assert. 42 U.S.C. § 9607(a). Liability under this section is imposed on four categories of potentially responsible parties ("PRPs"): (i) the owner and operator of a facility; (ii) any person who owned or operated the facility at the time the hazardous substances were disposed of; (iii) any person who by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances owned or possessed by that person, or by any other party or entity; and (iv) any person who accepted any hazardous substances for transportation to disposal or treatment sites selected by that person. 42 U.S.C. § 9607(a)(1)-(4).
In order to prevail in a private cost recovery action under CERCLA, a plaintiff bears the burden to establish that:
(a) The site in question is a "facility" as defined by 42 U.S.C. § 9601(9);
(b) There was a "release" or "threatened release" of any "hazardous substance" from the facility;
(c) Such release or threatened release has caused the plaintiff to incur response costs that were necessary and consistent with the national contingency plan under 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and
(d) The defendant is a "covered person" under 42 U.S.C. § 9607(a)(1)-(4).
See 42 U.S.C. § 9607(a); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 934 (8th Cir. 1995) ("Control Data").
The United States Supreme Court has held that Section 107(a) provides an implied cause of action for private parties to seek recovery of cleanup costs. Key Tronic Corp. v. United States, ___ U.S. ___, ___, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797 (1994). Under § 107(a), PRPs are strictly liable if there is a release or threatened release of a hazardous substance at a facility, and a person incurred necessary response costs consistent with the national contingency plan. 42 U.S.C. § 9607(a); Control Data, 53 F.3d at 935. Liability under § 107(a) is joint and several unless a PRP can demonstrate that the harm it caused is divisible, which is a "very difficult proposition" to establish. Control Data, 53 F.3d at 934 n. 4; see United States v. Monsanto Co., 858 F.2d 160, 171-72 (4th Cir.1988), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).
Defendants argue that (i) only an "innocent" party may bring a cost recovery action under § 107(a); and (ii) because plaintiffs are PRPs facing their own liability for CERCLA violations as owners and operators of the Site, they may not bring cost recovery claims under § 107(a). Defendants rely on Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764-65 (7th Cir.1994); United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96, 103 (1st Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); and United States v. SCA Services of Indiana, Inc., 849 F.Supp. 1264 (N.D.Ind.1994).[3]
Plaintiffs respond that (i) defendants have oversimplified the holdings of the cases on which they rely; and (ii) there is a split of authority among courts which have addressed the issue whether a potentially responsible party may bring a cost-recovery action against another potentially responsible party under § 107. Plaintiffs contend that the critical determination is whether a defendant is formally liable under § 107, and if there has been no formal admission or adjucation of liability, the better-reasoned cases hold that a § 107 action may proceed.
The issue before the Court is whether a liable or potentially liable party may bring an action to recover response costs under § 107 of CERCLA. The Eighth Circuit has not *630 addressed this issue directly. It should be noted, however, that the Eighth Circuit stated in a recent CERCLA case,
CERCLA focuses on whether the defendant's release or threatened release caused harm to the plaintiff in the form of response costs. If so, and if the other elements [of CERCLA liability] are established, the defendant is liable under CERCLA.
Once liability is established, the focus shifts to allocation.... Allocation is a contribution claim controlled by 42 U.S.C. § 9613(f) (CERCLA Section 113(f)).
Control Data, 53 F.3d at 935. At least one district court in another circuit has interpreted Control Data to mean that in the Eighth Circuit any private party CERCLA action brought by a liable party to recover costs is necessarily governed by the contribution provisions of § 113. See Gould Inc. v. A & M Battery and Tire Service, 901 F.Supp. 906, 913 (M.D.Pa.1995). The Court disagrees with this interpretation for the reasons discussed below, and does not believe the Control Data decision requires dismissal of plaintiffs' § 107 cost-recovery claim.
In Control Data, hazardous contaminants were released from the plaintiff's sewer lines into the environment. The plaintiff entered into a consent decree with a state agency for environmental cleanup prior to bringing an action against another party it claimed was also liable for the contamination. It is unclear whether the plaintiff in Control Data formally admitted liability as part of the state consent decree, but it did not deny responsibility for a portion of the hazardous waste release.
In Control Data, the Eighth Circuit did not directly address the issue presented by the instant case: Whether a potentially responsible party, which has not formally admitted liability or been formally adjudicated liable, is limited to a contribution action under § 113. This is particularly significant since the plaintiff in Control Data apparently did assert a claim under § 107 for declaratory judgment, which was not addressed by the Eighth Circuit's opinion. (See Appellee's Brief, Control Data, Nos. 94-1875, 94-2414, 94-2506 EMSL.) Further, in stating that allocation is a contribution claim controlled by CERCLA § 113, the Eighth Circuit did not cite the existing cases from other jurisdictions which hold that a liable party may not bring a § 107 action. In addition, unlike the present case, the plaintiff in Control Data admitted that it was responsible for the release of hazardous waste. Finally, in the past, both the Eighth Circuit and the United States Supreme Court have permitted liable parties to raise claims under a § 107 theory, although the issue was merely a background to the cases and not explicitly addressed.[4]
In the absence of controlling Eighth Circuit precedent, this Court concludes that plaintiffs may pursue their § 107 claims against defendants. The plain language of sections 107 and 113 does not indicate that PRPs are prohibited from bringing claims pursuant to Section 107. Bethlehem Iron Works, Inc. v. Lewis Industries, Inc., 891 F.Supp. 221, 225 (E.D.Pa.1995). Section 107 imposes liability on PRPs for necessary response costs "incurred by any other person". 42 U.S.C. § 9607(a). While the private right of action under § 107 is implied, see Key Tronic, ___ U.S. at ___, 114 S.Ct. at 1966, there is no indication that the private right of action is limited to "innocent" private parties. "[T]he § 107 liability provision, with its use of the term `any other person' and its limited defenses of liability, implies that Congress intended the liability of the provision to sweep broadly." Companies for Fair Allocation v. Axil Corp., 853 F.Supp. 575, 579 *631 (D.Conn.1994) (citing United States v. New Castle County, 642 F.Supp. 1258, 1264 (D.Del.1986)). Similarly, the text of § 113(f) provides a right of action for contribution, but does not provide that it is the exclusive remedy for PRPs. Bethlehem, 891 F.Supp. at 225. Further, as the Supreme Court noted in Key Tronic, actions under §§ 107 and 113 actions provide "somewhat overlapping" remedies. Key Tronic, ___ U.S. at ___, 114 S.Ct. at 1966; see Pneumo Abex Corp. v. Bessemer and Lake Erie R. Co., Inc., 921 F.Supp. 336, 346 (E.D.Va.1996). A number of district courts which have addressed this issue reject the argument that a PRP may not bring a cost-recovery action under Section 107(a).[5] The Court finds these decisions persuasive.
The Court recognizes that the circuit courts of appeal which have directly addressed this issue have come to a contrary conclusion. See, e.g., Akzo Coatings, Inc., 30 F.3d at 764-65 (plaintiff conceded liability as one of many PRPs which had delivered hazardous waste to a site; on the facts presented the plaintiff's claim against other PRPs was one for contribution, although the Seventh Circuit noted that under different facts Akzo might have the right to pursue a Section 107 cost recovery action, for example if it were "a landowner forced to clean up hazardous materials that a third party spilled onto its property"); United Technologies Corp., 33 F.3d at 103 (statute of limitations was the key issue; the Court held that where plaintiffs admitted liability after conducting contamination-producing activities at a site, their claim was necessarily classified as one for contribution, in part because of the First Circuit's view that actions under §§ 107 and 113 were "distinct, non-overlapping anodynes").[6] The Court has carefully considered these decisions and finds them less persuasive than the district court opinions cited, as well as factually distinguishable from the instant case, and therefore declines to follow them.
Accordingly, for the reasons discussed above, the Court concludes that plaintiffs should be permitted to pursue their Section 107 cost-recovery claims. Therefore, defendants' motion to dismiss Counts I and II, construed as a motion for summary judgment, should be denied.

II.
Defendants also move to dismiss Count I, plaintiffs' claim for declaratory judgment under § 107 of CERCLA, for failure to state a claim. Defendants argue that plaintiffs are not entitled to a declaratory judgment concerning defendants' future reimbursement obligations under CERCLA, because there is no presently-existing actual controversy, and plaintiffs' claims impermissibly seek remote and speculative relief.
Plaintiffs respond that they seek a declaration that defendants are liable for future response costs pursuant to and consistent with CERCLA Sections 107 and 113. Plaintiffs *632 contend that defendants' real objection is that any final declaratory judgment order should not include specific future damages which have not yet been incurred. Plaintiffs state that to the extent the Court finds their listing of damage categories in Count I to be over-inclusive, this error could be corrected in the final order.
CERCLA specifically contemplates entry of a declaratory judgment on liability for response costs or damages which will be binding in subsequent actions to recover further response costs or damages. CERCLA § 113(g)(2); 42 U.S.C. § 9613(g)(2). "[T]he only criterion for the recoverability of response costs under CERCLA is whether costs are consistent with the National Contingency Plan (NCP). All response costs not inconsistent with the NCP are recoverable." United States v. Kramer, 757 F.Supp. 397, 436 (D.N.J.1991) (statutory citation omitted). Thus, allegations that damages are remote, speculative or contingent "do not state an appropriate challenge" to the propriety of asserted response costs. Id. While the plaintiffs may not recover costs they have not yet incurred, they are authorized under CERCLA § 113(g)(2) to obtain a declaratory judgment that defendants are liable for future costs not inconsistent with the NCP. Id. at 437 (striking as premature and insufficient defenses that future costs are unrecoverable).
Defendants have failed to establish that it appears beyond doubt plaintiffs can prove no set of facts which would entitle them to relief on this claim. See Coleman, 40 F.3d at 258. Defendants' motion to dismiss plaintiffs' claim for declaratory relief in Count I should be denied.

III.
Defendants next move to dismiss Counts I, II and III on the basis that defendants resolved their potential CERCLA liability to the State of Illinois in the Consent Order discussed above,[7] and thus are protected from plaintiff's cost-recovery and contribution claims by virtue of CERCLA's contribution protection rule. CERCLA § 113(f)(2); 42 U.S.C. § 9613(f)(2). The Court construes this aspect of defendants' motion as a motion for summary judgment, as it implicates matters outside the pleadings.
As part of the Superfund Amendments and Reauthorization Act of 1986, Congress created the right of contribution to "alleviate the potentially unfair burden that joint and several liability may cause". Barmet Aluminum Corp. v. Doug Brantley & Sons, Inc., 914 F.Supp. 159, 162 (W.D.Ky.1995); Bethlehem Iron Works, Inc., 891 F.Supp. at 223. This provision is codified in CERCLA § 113(f), which provides in pertinent part:
Any person may seek contribution from any other person who is liable or potentially liable under section 107(a), during or following any civil action under section 106 or under section 107(a).... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate....
42 U.S.C. § 9613(f). The statute also provides, however, that a "person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." CERCLA § 113(f)(2); 42 U.S.C. § 9613(f)(2). See Farmland Industries, Inc. v. Morrison-Quirk Grain Corp., 54 F.3d 478, 482 (8th Cir.1995). Defendants assert that by virtue of this provision, the Consent Order they executed with the State of Illinois protects them from all of plaintiffs' CERCLA claims. Plaintiffs respond that defendants' argument is unsupported by caselaw or by the terms of the Consent Order.
The Court must look to the Consent Order as a whole to decide whether its provisions encompass the type of activity for which plaintiffs seek to hold defendants liable. See Akzo Coatings, 30 F.3d at 766. "Ultimately, the `matters addressed' by a *633 consent decree must be assessed in a manner consistent with both the reasonable expectations of the signatories" and congressional intent. Id. By its terms, the Consent Order between Mallinckrodt Specialty Chemical Company ("MSCC") and the State of Illinois (i) was limited to recovery of civil penalties and did not seek to recover response costs; (ii) was brought pursuant to the Illinois Environmental Protection Act, Ill.Rev.Stat.1991, ch. 111½, para. 1042; and the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §§ 6901 et seq.; and did not mention or implicate CERCLA; (iii) preserved the State of Illinois' right to bring further actions against MSCC; and (iv) specifically excepted from the scope of its covered matters any potential liability of MSCC for natural resource damage or other environmental damages, and private-party common law or statutory claims for contribution and/or response costs arising from the facts stipulated in the Consent Order.
The Court finds that defendants' payment of a civil fine to the State of Illinois pursuant to the Consent Order does not protect them from potential liability to plaintiffs under CERCLA. Courts have held that similar state consent decrees do not provide protection from subsequent private-party CERCLA claims. See, e.g., General Time Corp. v. Bulk Materials, Inc., 826 F.Supp. 471, 474-77 (M.D.Ga.1993) (state consent decree which did not mention CERCLA or resolve its claims, and was not approved pursuant to CERCLA § 122 did not bar a later contribution action).
The Court concludes that defendants have failed to establish the non-existence of any genuine issue of fact material to a judgment in their favor on plaintiffs' CERCLA claims in Counts I, II and III. See City of Mt. Pleasant, 838 F.2d at 273. Therefore, defendants' motion to dismiss Counts I, II and III on the basis of CERCLA's contribution protection rule, construed as a motion for summary judgment, should be denied.

IV.
Defendants next move to dismiss plaintiffs' state law breach of contract/warranty claim (Count IV) and misrepresentation claim (Count V). Defendants argue that in order to prevail on these claims, plaintiffs must establish that a contract existed between plaintiffs and defendants.[8] In support of their argument, defendants refer to certain purchase orders pertaining to the alleged disposal of defendants' waste products between October 1983 and May 1991. (See Exh. D to Defts.' Mem.Supp.) Thus, the Court treats this aspect of their motion to dismiss as a motion for summary judgment. Defendants contend the purchase orders reflect that plaintiff Laidlaw (Belleville) was not a party to any contract with defendants.
As plaintiffs note, the text of the purchase orders refers to "Laidlaw, Inc.", "Laidlaw Waste Systems, Inc." and "Laidlaw Waste Systems (Belleville), Inc." (See Exh. D to Defts.' Mem.Supp.) The purchase orders specifically state that Laidlaw (Belleville) will be an independent contractor under agreement. This language establishes, at minimum, the existence of an issue of material fact as to whether there was a contract between plaintiffs and defendants.
Thus, the Court concludes that defendants have failed to establish the non-existence of any genuine issue of fact material to a judgment in their favor on plaintiffs' contract-based claims in Counts IV and V. See City of Mt. Pleasant, 838 F.2d at 273. Defendants' motion to dismiss Counts IV and V, construed as a motion for summary judgment, should be denied.

V.
Defendants next move to dismiss plaintiffs' state law nuisance claim (Count VI). Defendants argue that plaintiffs fail to allege facts to support a nuisance theory, because they have not and cannot allege that defendants invaded the use of plaintiffs' property, as required under both Missouri and Illinois law.[9] Defendants contend that *634 the only alleged damage is the diminished economic value of the Site, diminished potential for waste disposal, and alleged increased post-closure overhead costs. Plaintiffs respond that defendants' disposal of hazardous waste on their property "has unquestionably interfered" with peaceful use and enjoyment of the Site, primarily relating to (i) plaintiffs' now-abandoned intent to expand the Site, and (ii) the hazardous waste disposal requirements imposed upon plaintiffs by IEPA. Defendants reply that plaintiffs' Complaint did not include any allegations concerning abandonment of the Site, and therefore the Court should disregard this contention.
The Court agrees with plaintiffs. Even if plaintiffs' claims regarding expansion were disregarded, plaintiffs adequately allege in their Complaint the key element which defendants claim to be absent, i.e., that defendants interfered with plaintiffs' use and enjoyment of their property. (See Complaint, ¶ 58.) The Court liberally construes the Complaint in a light most favorable to the plaintiffs. Coleman v. Watt, 40 F.3d at 258. A motion to dismiss will not be granted merely because a complaint does not state with precision every element of the offense necessary for recovery. Roberts v. Walmart Stores, Inc., 736 F.Supp. at 1528. Plaintiffs' complaint is sufficient as it contains allegations from which an inference can be drawn that evidence on material points will be introduced at trial. Id. Further, as plaintiffs note, nuisance may be established based on a defendant's conduct which is unreasonable as a matter of law. See Frank v. Environmental Sanitation Management, Inc., 687 S.W.2d 876, 880 (Mo. banc 1985).
Defendants have not established beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief on their nuisance theory, Coleman, 40 F.3d at 258, and therefore this aspect of defendants' motion should be denied.

VI.
Defendants next move to dismiss plaintiffs' misrepresentation claim, Count V. Defendants assert that under both Missouri and Illinois law, plaintiffs must "clearly and explicitly allege sufficient facts from which fraud is the necessary and probable inference", and must state the circumstances constituting fraud with particularity under Rule 9(b), Fed.R.Civ.P. (See Defts.' Mem.Supp., p. 11.) Defendants contend that plaintiffs' Complaint contains conclusory allegations that defendants' initial characterization of its waste products was a fraudulent misrepresentation, and that defendants maliciously and intentionally concealed information about the true nature of the waste, but fails to provide specific facts to support the conclusions asserted.
Plaintiffs respond that their Complaint alleges defendants "certified" over a period of time that the waste being shipped was not hazardous, when defendants either knew the waste was hazardous and affirmatively deceived plaintiffs, or did not know whether the waste was hazardous and falsely represented to plaintiffs that it was not. Plaintiffs assert that these allegations are sufficient to state a claim for fraudulent misrepresentation.
Federal courts apply the Federal Rules of Civil Procedure to matters of procedure when considering non-federal questions, whether in a diversity action or as here when a state claim is heard under supplemental jurisdiction. Sayre v. Musicland Group, Inc., 850 F.2d 350, 352 (8th Cir.1988); Bank of St. Louis v. Morrissey, 597 F.2d 1131, 1134-35 (8th Cir.1979). The applicable pleading standard is established by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." In this context, "`Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir.1982), cert. denied sub nom Prudential Ins. Co. of America v. Bennett, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *635 see also Greenwood v. Dittmer, 776 F.2d 785, 789 (8th Cir.1985) (conclusory allegations that a defendant, through its agents, made untrue statements of material fact or omitted to state material facts insufficiently specific to satisfy Rule 9(b)); see generally 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 9.03 (2d ed. 1995).
Plaintiffs allege in Count V and the common allegations of the Complaint that defendants repeatedly represented to plaintiffs that the waste was non-hazardous, when defendants either (i) knew the waste was hazardous; or (ii) made the representations to plaintiffs in reckless disregard for their truth or falsity; and (iii) the waste was subsequently revealed to be hazardous. (See Complaint, ¶¶ 11-14, 50-53.) These allegations are lacking in specific supporting facts from which it can be inferred that defendants knew their representations were false when made, or made the representations recklessly, without knowing if they were true or false. Further, plaintiffs have not alleged with adequate particularity what representations were actually made, by whom, when and where. See Bennett v. Berg, 685 F.2d at 1062; Greenwood v. Dittmer, 776 F.2d at 789.
Thus, the allegations of Count V fail to meet the requirements of Rule 9(b), and do not adequately apprise the defendants of the claims against them and the acts relied upon as constituting fraud. See Bennett, 685 F.2d at 1063. Accordingly, defendants' motion to dismiss will be granted as to Count V. Plaintiffs will be allowed twenty (20) days in which to file an amended complaint which meets the requirements of Rule 9(b).

VII.
Defendants next move to dismiss plaintiffs' claims for nuisance (Count VI), negligence (Count VII), and negligent misrepresentation (Count VIII), on the basis that plaintiffs are improperly seeking to recover under tort theories for economic losses arising out of a contractual relationship. See Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); Sharp Bros. Contracting Co. v. American Hoist & Derrick Co., 703 S.W.2d 901 (Mo.banc 1986).[10] Defendants state that in each of these counts, plaintiffs allege a diminution in value of the Site and an increase in post-closure maintenance expenses as a result of defendants' "alleged breach of the alleged waste disposal contract". (Defts.' Mem.Supp., p. 13.) Defendants contend that all of plaintiffs' claimed damages arise out of disappointed contract expectations, and therefore may not be recovered under a tort theory.
Plaintiffs respond that the economic loss doctrine, when applicable, denies recovery for purely economic losses, but applies in tort actions where the only damage is to the product sold. See, e.g., Sharp Bros., 703 S.W.2d at 903 (no recovery allowed for injury to the product sold on a theory of strict liability in tort). Plaintiffs correctly note that where damage is claimed to property other than the product sold, the economic loss doctrine is not applicable. See Clayton Center Assocs. v. W.R. Grace & Co., 861 S.W.2d 686, 692 (Mo.App.E.D.1993). Plaintiffs contend that the economic loss doctrine is inapplicable to this case because they assert damage to other property, specifically the Site.
The Court finds that the economic loss doctrine is inapplicable to plaintiffs' claims in Counts VI, VII and VIII. This is because:
`Economic loss' has been defined as `damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profitswithout any claim of personal injury or damage to other property ... as well as the `diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'
Moorman Mfg. Co., 91 Ill.2d at 82, 61 Ill.Dec. at 752, 435 N.E.2d at 449 (citations omitted). "To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an *636 interest that tort law traditionally protects." Redarowicz v. Ohlendorf, 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 414, 441 N.E.2d 324, 327 (1982); see also Crowder v. Vandendeale, 564 S.W.2d 879, 882 (Mo.banc 1978) (personal injury or damage to property interests compensable in tort, while a mere deterioration or loss of a bargain is not). The economic loss doctrine bars recovery on a tort theory in "the commercial context wherein harm is to a consumer's commercial expectations." Chicago Heights Venture v. Dynamit Nobel of America, Inc., 782 F.2d 723, 728 (7th Cir.1986) (quoting Ferentchak v. Village of Frankfort, 121 Ill.App.3d 599, 605, 76 Ill.Dec. 950, 955, 459 N.E.2d 1085, 1090 (1984)).
In this case, plaintiffs allege they contracted to allow defendants to deposit non-hazardous waste at the Site in return for monetary compensation, but defendants instead deposited hazardous waste. As a result, plaintiffs allege they incurred various monetary damages and suffered permanent damage to their real property. Plaintiffs clearly assert claims for damage above and beyond any mere disappointed commercial expectations or desire to enjoy the benefit of their alleged agreement with defendants. Defendants' motion to dismiss Counts VI, VII and VIII should be denied.

VIII.
Finally, defendants move to dismiss all of plaintiffs' claims against defendant Mallinckrodt, Inc. on the basis that plaintiffs have failed to provide any basis for imputing liability to this defendant for the acts of its subsidiary, defendant Mallinckrodt Chemical, Inc. Defendants assert that there is a complete absence of factual allegations relating to the relationship between the parent and subsidiary companies.
Plaintiffs respond that they have sufficiently alleged facts necessary to impose liability on each defendant, because they have made collective allegations against each defendant. Plaintiffs also note that the purchase orders attached to defendants' motion to dismiss variously list Mallinckrodt, Inc. and Mallinckrodt Chemical, Inc. as the contracting parties.
The Court agrees with plaintiffs. This is not a case in which plaintiffs' sole allegation against Mallinckrodt, Inc. is that it is the parent corporation of defendant Mallinckrodt Chemical, Inc. Cf. Barket, Levy & Fine v. Catalyst Energy Corp., 1988 WL 159132 at *3 (E.D.Mo.1988) (motion to dismiss granted where plaintiff's sole basis for claim against a defendant was its status as parent corporation of another defendant; no facts were alleged to directly connect the parent corporation to the action or to impute the subsidiary's liability to the parent). In this case, plaintiffs have alleged that Mallinckrodt, Inc. individually committed the various acts and omissions of which plaintiffs complain. For purposes of this motion, the Court accepts these allegations as true. Conley v. Gibson, 355 U.S. at 45-46, 78 S.Ct. at 101-02. Thus, this aspect of defendants' motion to dismiss should be denied.
Conclusion. In accordance with the foregoing discussion, defendants' motion to dismiss, construed in part as a motion for summary judgment, will be denied except as to Count V, plaintiffs' fraudulent misrepresentation claim. Plaintiffs may, if they desire, file an amended complaint within twenty (20) days of the date of this order, which shall allege their claim for fraudulent misrepresentation in accordance with the requirements of this order and Rule 9(b), Fed.R.Civ.P.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion to dismiss, construed in part as a motion for summary judgment, is GRANTED in part and DENIED in part; said motion is GRANTED as to Count V and DENIED in all other respects. [Doc. 4]
IT IS FURTHER ORDERED that plaintiffs may file an amended complaint within twenty (20) days of the date of this order, as set forth herein.
NOTES
[1] See 42 U.S.C. § 9601(14).
[2] See 42 U.S.C. § 9607(a).
[3] The Court notes that the SCA Services decision does not support defendants' position.
[4] See General Electric Co. v. Litton Indus. Automation Systems, Inc., 920 F.2d 1415, 1418 (8th Cir.1990), cert. denied, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991) (plaintiff, a former owner of a site, entered into a consent decree with a state agency and others to clean up a site prior to plaintiff's § 107(a) action against another PRP). The Eighth Circuit did not mention the General Electric Co. v. Litton decision in Control Data. See also Key Tronic v. United States, ___ U.S. at ___, 114 S.Ct. at 1967 (plaintiff was a liable party because it disposed of hazardous wastes in a landfill. Plaintiff sought contribution under CERCLA § 113(f), and additional response costs, including attorney's fees, under Section 107(a). The Supreme Court did not hold that the § 107(a) claim failed because the plaintiff was a liable party, but rather held only that § 107(a) did not provide for the award of attorney's fees associated with a cost recovery action.)
[5] See Pneumo Abex Corp. v. Bessemer and Lake Erie R. Co., Inc., 921 F.Supp. 336, 346 (E.D.Va. 1996); Barmet Aluminum Corp. v. Doug Brantley & Sons, Inc., 914 F.Supp. 159, 164 (W.D.Ky. 1995); United States v. Taylor, 909 F.Supp. 355, 360-66 (D.N.C.1995); Bethlehem Iron Works, Inc. v. Lewis Industries, Inc., 891 F.Supp. 221 (E.D.Pa.1995); Town of Wallkill v. Tesa Tape, Inc., 891 F.Supp. 955 (S.D.N.Y.1995); Companies for Fair Allocation v. Axil Corp., 853 F.Supp. at 579; United States v. SCA Services of Indiana, Inc., 849 F.Supp. 1264, 1281-82, reconsideration denied, 865 F.Supp. 533 (N.D.Ind.1994); Transportation Leasing Co. v. State of California, 861 F.Supp. 931, 938 (C.D.Cal.1993); Chesapeake and Potomac Telephone Co. of Virginia v. Peck Iron & Metal Co., 814 F.Supp. 1269, 1277 (E.D.Va.1992); Kelley v. Thomas Solvent Co., 790 F.Supp. 710, 717 (W.D.Mich.1990); United States v. Kramer, 757 F.Supp. 397, 416-17 (D.N.J.1991); Burlington Northern R. Co. v. Time Oil Co., 738 F.Supp. 1339 (W.D.Wash.1990); Sand Springs Home v. Interplastic Corp., 670 F.Supp. 913, 916 (N.D.Okla.1987); Chemical Waste Management, Inc. v. Armstrong World Industries, Inc., 669 F.Supp. 1285, 1291-92 (E.D.Pa.1987).
[6] See also United States v. Colorado & Eastern R. Co., 50 F.3d 1530, 1536 (10th Cir.1995) (any claim to reapportion cleanup costs between PRPs is "the quintessential claim for contribution"; to permit a liable party to recover under Section 107 would render Section 113 meaningless); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir.1989) ("[w]hen one liable party sues another to recover its equitable share of the response costs, the action is one for contribution"; however, the Fifth Circuit did not expressly foreclose the possibility of a PRP proceeding under § 107.)
[7] People of the State of Illinois v. Mallinckrodt Specialty Chemicals Company, Case No. 92-CH-58. (Exh. B to Defts.' Mem.Supp.)
[8] Defendants also move separately to dismiss plaintiffs' misrepresentation claim, Count V. The Court will address this issue out of turn, infra, as did the parties.
[9] The parties recognize the potential choice of law issues present in this case, but agree that Missouri and Illinois law is substantially in accord on the issue presented, and cite to authority from both states. The Court need not and does not reach the choice of law issue at this early juncture.
[10] See note 9, supra.